UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LEVERT STEWART,
    Plaintiff,

vs.                                        Case No.: 3:21cv00719/MCR/ZCB

OFFICER COATES, et al.
    Defendants.
_____/

# REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights case filed under 42 U.S.C. § 1983. (Doc. 1). Plaintiff claims that several correctional officers used excessive force against him, and he claims a prison nurse acted with deliberate indifference to his serious medical needs. Defendants have moved to dismiss, arguing that Plaintiff failed to exhaust administrative remedies. (Docs. 72, 89, 125, 141). Plaintiff has responded in opposition. (Doc. 105). The Court held an evidentiary hearing regarding the exhaustion issue. The matter is ripe for resolution. For the reasons below, this case should be dismissed because Plaintiff failed to exhaust his administrative remedies.

## I.    Background

Plaintiff's complaint names nurse C. Neely and the following correctional officers at Santa Rosa Correctional Institution (SRCI) as Defendants: Coates,

1

Malishan, Steve Thomas, and Christopher Nicolas ("SRCI Defendants").[1] Plaintiff alleges the SRCI Defendants violated the Eighth Amendment by using excessive force against him on September 14, 2020. (Doc. 38 at 6-7). More specifically, Plaintiff claims they bent his legs and slammed them against the steel door frame of his cell while he was restrained. (*Id.*). According to Plaintiff, this action by the SRCI Defendants "resulted in permanent disfigurement, damaged macular or soft tissue, and nerve damage to [Plaintiff's] right leg which causes [Plaintiff] to walk with a limp and suffer from mental distress." (*Id.* at 6). As for Defendant Nurse C. Neely, Plaintiff alleges she violated the Eighth Amendment by being deliberately indifferent to his serious medical needs when she failed to appropriately report and/or treat his injuries. (*Id.* at 7-8). Plaintiff's complaint seeks an unspecified amount of punitive and compensatory damages. (*Id.* at 9).

In response to Plaintiff's complaint, the SRCI Defendants filed a motion to dismiss for failure to exhaust administrative remedies. (Docs. 72, 89, 125). Defendant Nurse C. Neely later adopted the SRCI Defendants' motion as her own. (Doc. 141). The SRCI Defendants subsequently supplemented their motion with additional information. (Docs. 112, 120). Plaintiff responded in opposition. (Docs. 105, 137). Plaintiff also submitted an affidavit and other documents that he claims

---

[1] Defendant Officer Christopher Nicolas was added to this case on January 3, 2023; he replaced former Defendant Officer Nicolas Webb. (Docs. 92, 99).

2

are copies of the grievances he filed regarding the incident at issue in this case. (Doc. 83).[2]

The Court held an evidentiary hearing on May 16, 2023. At the hearing, the Court heard testimony on behalf of Defendants from Matthew Ward, Debbie Jones, Nichola Perry, James Pittman, Adele Johns, and Michael Norfeld. Plaintiff testified on his own behalf. Fifty-four exhibits were also admitted during the hearing.

## II. Findings of Fact

Based on the testimony at the hearing, the documentary evidence provided by the parties, and the information in the record, the Court makes the following findings of fact:

---

[2] Based on the submission of additional information beyond the pleadings, the Court previously expressed an inclination to convert the motions to dismiss into motions for summary judgment. (Doc. 93). Having since received clarification regarding the nature and purpose of the additional information (*see* Doc. 106), the Court does not believe it is necessary to convert the motions to dismiss into motions for summary judgment. That is so because the Court may consider information beyond the pleadings when deciding a motion to dismiss for failure to exhaust. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008) ("In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact.") (quoting *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003)); *see also Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 425 (11th Cir. 2010) (explaining that "in ruling on [the defendant's] Rule 12(b) motion to dismiss based solely on exhaustion of administrative remedies and not on the merits of [the plaintiff's] claims, the district court did not err in considering evidence outside the pleadings or in making fact findings as to exhaustion"). Thus, the Court hereby **vacates** its prior order (Doc. 93) that addressed converting the motions to dismiss for failure to exhaust into motions for summary judgment.

3

1. The Florida Department of Corrections (FDOC) has adopted a grievance procedure that inmates are required to use when raising a concern about their incarceration. The grievance procedure has been codified in Rule 33-103.001 *et seq.* of the Florida Administrative Code.

2. The grievance procedure consists of three steps: (1) the inmate files an informal grievance within twenty days of the incident; (2) if the informal grievance does not resolve the issue to the inmate's satisfaction, then the inmate files a formal grievance within fifteen days of the response to the informal grievance; and (3) if the inmate is unhappy with the response to the formal grievance, then the inmate files an appeal with the Office of the Secretary of the FDOC within fifteen days of the response to the formal grievance. *See* Fla. Admin. Code Ann. r. 33-103.005-007, 011 (2018).

3. SRCI has developed a protocol for the collection of inmate grievances from inmates who are in confinement. That protocol involves SRCI classification officers walking from cell-to-cell on a daily basis while holding a grievance lockbox. The inmates either place their grievances in a small slit at the top of the lockbox or hand it to the classification officer who places it in the slit at the top of the lockbox. The lockbox is then brought to the grievance coordinator.

4. The grievance coordinator is the only individual with a key to the lockbox.

5. Upon receiving the lockbox, the grievance coordinator opens it and processes the grievances. The processing consists of date-stamping each grievance, logging it into the system, and then assigning the grievance to the appropriate official (based on the nature of the grievance) for a response.

6. Once a response is completed, the response is logged and then provided to the inmate.

7. A grievance that has been received by the grievance coordinator would contain various markings on it, including a date-stamp and a log number.

8. When an inmate appeals a formal grievance response to the FDOC's Central Office, the appeal is logged and stored electronically by the FDOC's Bureau of Inmate Appeals.

9. The incident that forms the basis of Plaintiff's complaint allegedly occurred on September 14, 2020.

10. Any grievances or appeals submitted by Plaintiff regarding the September 14, 2020, incident would have followed the SRCI procedure as described above.

11. SRCI has no record of any informal grievance from Plaintiff regarding the incident that allegedly occurred on September 14, 2020.

12. SRCI has no record of any formal grievance from Plaintiff regarding the incident that allegedly occurred on September 14, 2020.

13. The FDOC's Bureau of Inmate Appeals has no record of any appeal regarding the incident that allegedly occurred on September 14, 2020.

14. Plaintiff has not submitted any response provided to him by SRCI officials or the FDOC Bureau of Inmate Appeals regarding any informal grievance, formal grievance, or appeal regarding the incident that allegedly occurred on September 14, 2020.

15. SRCI records reflected the receipt of other grievances from Plaintiff regarding complaints about issues other than the alleged incident that occurred on September 14, 2020.

16. In fact, Plaintiff submitted a grievance about another issue on September 14, 2020. That grievance was date-stamped, logged, and responded to by prison officials. (*See* Doc. 72-10).

17. On September 15, 2020, Plaintiff submitted a grievance about another issue. That grievance was date-stamped, logged, and responded to. (*See* Doc. 72-11).

18. Although there is no record of Plaintiff submitting any informal grievance, formal grievance, or appeal regarding the September 14, 2020, incident, the FDOC's Office of Inspector General did receive a letter from Plaintiff regarding the September 14, 2020 incident.

19. The FDOC has a specific procedure for Grievances of Reprisal. A Grievance of Reprisal is "[a] grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." Fla. Admin. Code Ann. r. 33-103.002(9).

20. If Plaintiff believed his grievances were being intercepted or he was otherwise being prevented from filing grievances as an act of retaliation resulting from the September 14, 2020, incident, then he could have filed a Grievance of Reprisal.

21. The FDOC has no record of a Grievance of Reprisal from Plaintiff regarding the incident on September 14, 2020.

22. After the alleged incident occurred at SRCI, Plaintiff was transferred to Florida State Prison.

23. An inmate can file a grievance at one institution regarding an incident that occurred at another institution. Thus, Plaintiff could have filed a grievance at Florida State Prison regarding what allegedly occurred at SRCI on September 14, 2020.

24. Florida State Prison has no record of any grievances from Plaintiff regarding the September 14, 2020 incident at SRCI.

25. While at Florida State Prison, Plaintiff submitted numerous grievances regarding other issues. Those grievances were logged and responded to by prison officials.

26. During the discovery process in this lawsuit, Plaintiff provided five documents that he claims are "copies" (reproduced by hand) of the grievances he submitted at SRCI regarding the September 14, 2020 incident.

27. None of the "copies" provided by Plaintiff contain date-stamps, log numbers, responses, or any other indication that they were ever submitted and received by SRCI or the FDOC Bureau of Inmate Appeals.

28. The grievance records of SRCI and the FDOC Bureau of Inmate Appeals do not reflect the receipt of any grievances regarding the September 14, 2020, incident that resemble the "copies" provided by Plaintiff in discovery.

### III. Discussion

#### A. Exhaustion Procedure

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner is required to exhaust administrative remedies before bringing an action under any federal law, including actions alleging excessive force by corrections officers. *See Porter v. Nussle*, 534 U.S. 516, 520 (2002); *see also Coleman v. Bowden*, 797 F. App'x 422, 427 (11th Cir. 2019) ("Under the [PLRA] . . . a prisoner may not bring suit regarding prison conditions under § 1983 until he exhausts all

8

available administrative remedies."). An inmate in FDOC custody exhausts administrative remedies by complying with the FDOC's grievance procedure. *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017).

The grievance procedure has three steps: (1) the inmate files an informal grievance within twenty days of the incident; (2) if the grievance is not resolved at that level, then the inmate files a formal grievance at the institutional level within fifteen days from the date the informal grievance was responded to; and (3) if the inmate is unhappy with the response at the institutional level, then the inmate files an appeal with the FDOC Central Office within fifteen days of the response to the formal grievance. Fla. Admin. Code Ann. r. 33-103.005-007, 011 (2018).

The PLRA's exhaustion requirement was enacted to "eliminate unwarranted federal-court interference with the administration of prisons" and "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006) (cleaned up) ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."); *see also Preiser v. Rodriguez*, 411 U.S. 475, 491-92 (1973) (recognizing the "intimate" relationship between "state prisoners and the state officers who supervise their confinement"). A prisoner is not free to skip steps

9

in the administrative grievance process nor is a prisoner free to attempt to bypass the process entirely. The law is clear in that regard. *See, e.g., Pavao*, 679 F. App'x at 819 (explaining that a prisoner must comply with the "critical procedural rules governing the grievance process"—a failure to file the proper forms and go through the three step process constituted non-exhaustion).

An inmate's failure to exhaust administrative remedies is an affirmative defense properly raised by a defendant in a motion to dismiss. *See Brooks v. Warden*, 706 F. App'x 965, 968 (11th Cir. 2017) ("Under Federal Rule of Civil Procedure 12(g)(2), a defendant must raise the exhaustion defense in his first Rule 12 motion, otherwise the defense is forfeited and cannot be raised in a later motion under Rule 12."). The Eleventh Circuit has adopted a two-step analytical framework to be used when deciding whether a matter court should be dismissed for lack of exhaustion. *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008). At the first step, the Court must "look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). If the facts as stated by the prisoner show a failure to exhaust, then the case should be dismissed at step one. *Id*. Where dismissal is not warranted on the prisoner's view of the facts, the court must proceed to step two. *Id.* At step two, "the court makes

specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust." *Id*.

Here, with respect to the factual allegations raised in the motion to dismiss, Defendants contend that "Plaintiff did not submit a single grievance or administrative appeal which alleged abuse by Defendants on September 14, 2020." (Doc. 72 at 2). The FDOC's records do not reflect any filed, informal grievances regarding the alleged use of excessive force at issue in this case. (*Id.*). Defendants assert that because Plaintiff was in a confinement cell when he claims to have submitted his grievances, "only the inmate, the grievance coordinator, and warden at SRCI ha[d] access to the grievance. There was no opportunity for Plaintiff's grievance to be intercepted as alleged by Plaintiff." (*Id.* at 11).

Because Plaintiff failed to comply with the FDOC grievance process, Defendants contend Plaintiff failed to exhaust administrative remedies in accordance with 42 U.S.C. § 1997e(a). Therefore, they argue that this case should be dismissed. (*Id.* at 4).

Alternatively, Plaintiff asserts that he did in fact file grievances regarding the September 14, 2020 alleged use of excessive force. He claims, however, that his grievances were wrongly "intercepted" by prison staff and, therefore, never responded to. (Doc. 137 at 2). In support of his assertion, Plaintiff includes what he says are "copies" of grievances and administrative appeals that he filed regarding

11

the September 14, 2020 incident. But the "copies" are blank in every box or signature line that requires verification of receipt by the institution or a response by prison staff. (Doc. 105-1: 105-3). Nothing on the "copies" indicates that the grievances and administrative appeals were ever processed or in any way received by prison staff. (Doc. 105 at 6).

This case cannot be resolved at *Turner* step one because the allegations in Defendants' motion to dismiss conflict with Plaintiff's allegations regarding exhaustion. *See Turner*, 541 F.3d at 1082. Defendants claim the FDOC never received any grievances from Plaintiff regarding the September 14, 2020 incident. Plaintiff contends he submitted grievances, but they were wrongfully intercepted by prison officials. Because the parties' accounts conflict, the Court must take "[P]laintiff's version of the facts as true" at step one. *See id.* Taking Plaintiff's facts as true, Defendants are not entitled to have the complaint dismissed for failure to exhaust at step one.

The analysis then proceeds to *Turner* step two, where the Court "make[s] specific findings in order to resolve the disputed factual issues related to exhaustion." *See id.* At this step, the Court makes credibility determinations and weighs the evidence. *See Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018) (affirming the district court's weighing of the evidence and "credit[ing] the defendants' affidavits over [the plaintiff's] exhibits" at *Turner* step two when the

plaintiff claimed the defendants "deliberately lost or destroyed" his grievance associated with the incident); *see also Dunlap v. Corizon Health Care*, No. 5:15cv328, 2017 U.S. Dist. LEXIS 130808, at *13-14 (N.D. Fla. Feb. 1, 2017) (determining the plaintiff's contention that he filed an informal grievance but never received a response was "not entitled to any evidentiary weight" because it "fail[ed] to overcome the other evidence demonstrating that [the p]laintiff did not properly exhaust administrative remedies").

Here, the record is clear that the grievances Plaintiff claims to have submitted regarding the September 14, 2020 incident were never received or otherwise processed by prison staff. The "copies" Plaintiff has provided in discovery have no date-stamps, signatures of prison officials, or log numbers. They are completely blank in the area designated for an institutional response. There is also no record in the logbooks of any grievance filed by Plaintiff complaining of a use of excessive force on September 14, 2020. Additionally, other grievances that Plaintiff submitted on the same day and around the same time moved through the process without alleged "interception." There is simply no reasonable explanation why some of Plaintiff's grievances would be received, logged, and responded to while *only* the grievances relating to the September 14, 2020 incident would be repeatedly intercepted and discarded. The information introduced at the hearing established that SRCI has a process in place pursuant to which the corrections officers who were

13

involved in the September 14, 2020 incident would have had no involvement in the collection and processing of Plaintiff's grievances. The Court has been provided with no evidence to support a conclusion that individuals at SRCI such as the grievance coordinator (who was not involved in the September 14, 2020 incident) repeatedly intercepted and discarded some of Plaintiff's grievances while allowing others to go through the process.

Taken together, the lack of evidence indicating that SRCI/FDOC received a grievance regarding the September 14, 2020 incident and evidence that other grievances filed by Plaintiff were able to proceed through the grievance process, refute Plaintiff's contention that his attempts to exhaust administrative remedies were thwarted by prison staff. *See Lawson v. McGee*, No. 19-81526, 2021 WL 2515683, at *5-6 (S.D. Fla. June 18, 2021) (finding that, at *Turner* step two, the plaintiff's "copies" of grievances did not show he exhausted his administrative remedies because there was no indication FDOC ever received the copies and other grievances from the plaintiff were recorded and submitted during the same timeframe without being allegedly "destroyed"); *see also Evans v. Thompkins*, No. 19-25021, 2020 WL 9211282, at *3-4 (S.D. Fla. June 12, 2020) (finding that at step two, the plaintiff's unsubstantiated testimony that someone interfered with his grievance submission was implausible when the same person had processed over 30 other grievances and appeals on the plaintiff's behalf); *Skipper v. Jones*, No. 3:12-

cv-648, 2015 WL 5125778, at *5 (M.D. Ala. Aug. 31, 2015) ("Plaintiff's conclusory assertion he wrote request forms that went unanswered and . . . were hidden, misplaced, and/or thrown away, fails to overcome [the d]efendants' evidence showing that a grievance system was available at the facility for Plaintiff's claims and that he failed to exhaust properly the administrative remedy available to him."). Plaintiff's claim that he submitted grievances about the alleged incident and that such grievances were intercepted lacks support in the record.[3] The Court finds a lack of credibility in Plaintiff's assertion that he submitted the grievances for filing as reflected by the "copies" he provided in discovery. Therefore, at step two, Defendants have met their burden to show Plaintiff did not exhaust his administrative remedies.[4]

## B. Unavailability Exception

A prisoner is not required to exhaust administrative remedies under 42 U.S.C. § 1997e(a) if the grievance procedure is unavailable. *Ross v. Blake*, 578 U.S. 632,

---

[3] Although Plaintiff did submit a letter to the FDOC Inspector General regarding the September 14, 2020 incident, submission of such a letter alone does not constitute exhaustion of administrative remedies. *See Pavao*, 679 F. App'x at 825 (stating that letters to the "Inspector General of the FDOC are not relevant to the question of exhaustion because they are not part of the prison grievance procedure").

[4] The Court's analysis applies equally to Defendant C. Neely, a Centurion nurse contracted to provide medical treatment with the FDOC. The FDOC's grievance procedure applies to an inmate's claims against contracted medical staff. *See Scott v. Frame*, No. 3:20cv5968, 2021 WL 6690008, at *9-10 (N.D. Fla. Dec. 9, 2021) (dismissing an inmate's case against medical defendants for failure to exhaust administrative remedies in accordance with the FDOC's grievance procedure).

642-43 (2016). There are three circumstances when the grievance procedure is unavailable: (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes . . . incapable of use . . . [and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-45.

To prove unavailability by intimidation, a prisoner must show that the threat both actually deterred him and that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Turner*, 541 F.3d at 1085 (finding that "serious threats of substantial retaliation against an inmate for lodging . . . a grievance make the administrative remedy unavailable"); *see Hoever v. Hampton*, No. 4:14cv273-WS/CAS, 2016 WL 3647596, at *3 (N.D. Fla. May 19, 2016) (holding that explicit threats of harming the inmate with "chemical agents" and threats that the next grievance would be the inmate's "last" demonstrated unavailability). The burden is on the plaintiff to demonstrate that the grievance procedure was both subjectively and objectively unavailable. *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020). A plaintiff's self-serving statements are insufficient to show that administrative remedies are unavailable. *See Upkins v.*

16

*Coleman*, No. 5:20-cv-140, 2022 WL 2445028, at *6 (S.D. Ga. June 13, 2022) (determining that the evidence in the record was more persuasive than the plaintiff's self-serving statements that he exhausted all administrative remedies).

Here, Plaintiff appears to argue that he could not have exhausted his administrative remedies because such remedies were unavailable to him. Plaintiff's argument lacks merit. *See Oliver v. Gafford*, No. 5:15-cv-153, 2018 WL 1938309, at *5 (N.D. Fla. Ja. 9, 2018) (holding that the plaintiff's argument that administrative remedies were unavailable to him because his grievances were not responded to lacked merit because he "successfully submitted [other] grievances during the relevant time period").

Plaintiff contends there are "questions about whether" the grievance procedure was made "unavailable" by the interception and destruction of grievances that he alleges occurred. (Doc. 105 at 1-7). Plaintiff has provided insufficient information to substantiate the allegations he has made regarding the interception and destruction of his grievances. As explained above, the evidence does not support Plaintiff's claims that any interception occurred. Further, as Defendants highlight, Plaintiff submitted a grievance about an unrelated matter on the very same day that he alleges the grievance procedure was unavailable to him—September 14, 2020. (Doc. 72-10). That grievance was received and processed by prison staff. (*Id.*). The next day, Plaintiff also submitted a grievance on another matter. That grievance was

17

also received and processed by prison staff. (Doc. 72-11). Therefore, Plaintiff's argument that the grievance procedure was unavailable is undermined by the fact that Plaintiff used the procedure for another matter on the very day he claims it was not available to him. *See Oliver*, 2018 WL 1938309, at *5.

Importantly, to demonstrate unavailability by threats, the threat must actually "deter the plaintiff inmate from lodging a grievance." *Turner*, 541 F.3d at 1085. But here, Plaintiff was not deterred from lodging a grievance by any threats from prison staff. Indeed, Plaintiff filed a grievance regarding another matter on the very day that he alleges the unconstitutional use of excessive force took place, as well as on the day after. Plaintiff has merely asserted that his access to the procedure was "thwarted" by prison staff, but he has provided no evidence to support this assertion. *See McDowell v. Fnu Bowman*, No. 21-10840, 2022 WL 4140331, at *4 (11th Cir. Sept. 13, 2022) (affirming dismissal on exhaustion when the plaintiff made mere "conclusory statements broadly asserting that prison officials did not allow him to engage in the formal process" and failed to show evidence that the grievance was actually submitted). In short, Plaintiff has not demonstrated that a reasonable inmate would have been deterred from lodging a grievance, nor that Plaintiff actually was deterred from lodging a grievance. Thus, Plaintiff has not demonstrated that the grievance procedure was unavailable to him.

## IV. Conclusion

For the reasons above, Plaintiff failed to exhaust his administrative remedies before filing this lawsuit.

Accordingly, it is respectfully **RECOMMENDED** that:

(1) Defendants' motions to dismiss (Docs. 72, 89, 125, 141) be **GRANTED,** and Plaintiff's action be **DISMISSED** without prejudice for failure to exhaust administrative remedies under the Prison Litigation Reform Act; and

(2) The Clerk of Court be directed to close this case.

At Pensacola, Florida, this 3rd day of July 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**